(No. 2583.)

## KINNEY v. NEW MEXICO MIDLAND RY. CO.

### SYLLABUS BY THE COURT

(1) A finding of the State Corporation Commission as to the justness and duly compensatory character of an intrastate freight rate will be sustained by this court, where the finding is supported by substantial and satisfactory evidence.

P. 455

(2) The fixing of an intrastate frieght rate by the State Corporation Commission on December 3, 1920, on the New Mexico Midland Railway Company's lines from Carthage to San Antonio, N. M., was within the power of such commission, under section 7 of article 11 of the state Constitution.

P. 455

Petition by Bartley H. Kinney before the State Corporation Commission against the New Mexico Midland Railway Company. The Commission made an order which defendants refused to obey, and upon motion of petitioner, the cause was removed to the Supreme Court for consideration. Defendant commanded to put order of Commission into effect.

James G. Fitch, of Socorro, for petitioner.

E. R. Wright, of Santa Fe, for respondent

### OPINION OF THE COURT

PARKER, C. J. On November 11, 1918, the appellee filed a petition before the State Corporation Commission for the purpose of reducing the rates, which had been promulgated and charged by the defendant company, on coal and other commodities. The petitioner alleged that he was the owner of a coal mine, and was engaged in operating the same, and in mining coal therefrom at a place known as Tokay, within the Carthage coal district, in the county of Socorro,

and in shipping coal from said point over defendant's railway, and was also engaged in the business of operating a general merchandise store at said point. He alleged that the defendant company was a railroad corporation organized under the laws of this state, owning and engaged in operating as a common carrier a line of railroad from San Antonio to Carthage, which line is 10 miles in length; that said railroad was what is commonly known as a coal road, and that practically 99 per cent of the freight transported over it consisted of coal, hauled from the mines in said district, to San Antonio, and mining timbers, machinery, and other supplies used in the mines, provisions and miscellaneous merchandise for stores operated in connection with the mines hauled from San Antonio to said mines, all of which said freight, except small quantities of merchandise, was hauled in carload lots in cars furnished by the Atchison, Topeka & Santa Fe Railway Company; that petitioner, and one other producer and shipper of coal, the Carthage Fuel Company, were the only shippers of coal over said railroad; that when petitioner commenced operating his coal mine in 1914, defendant's freight rates, as promulgated and established by its freight tariffs, between Carthage and San Antonio, were 50 cents per ton on coal, which rates remained in force up to June 25, 1918; that on or about January 1, 1918, the defendant company came and passed under the control of the government of the United States, and on June 20, 1918, it promulgated its freight tariff No. 1-F, effective June 25, 1918, in which the rate between Carthage and San Antonio was fixed at 85 cents per ton on coal; that on or about July 1, 1918, the defendant company was released from all control by the government of the United States Railroad Administration, and the management and administration of the road was resumed by the defendant company; that the defendant company has nevertheless continued to maintain and

charge said increased rates and had compelled the petitioner to pay the same; that the said rate of 85 cents per ton so charged was grossly excessive, unjust, and unduly compensatory, and discriminatory; that the defendant company had never established a joint rate with the Atchison, Topeka & Santa Fe Railway Company, or other railroad, and no through rate to interstate points had ever been established, promulgated, or charged by defendant. The petitioner therefore prayed for a hearing before the State Corporation Commission, and for an order establishing a reasonable and just rate on coal and other shipments.

The defendant filed an answer to the petition in which it denied broadly that the tariff charged by it was unjust or unduly compensatory, and alleging that subsequent to July 6, 1918, upon which date the United States government relinquished control over the defendant company, the United States Railroad Administration, Division of Tariffs, issued an order to the Atchison, Topeka & Santa Fe Railway Company requiring them to put into effect a combined rate on coal from Carthage, N. M., over the line of the defendant company and the line of the said Atchison, Topeka & Santa Fe Railway Company, through the said junction point of San Antonio to points beyond the said junction point of San Antonio, and requesting said Atchison, Topeka & Santa Fe Railway Company to make effective at once a joint through tariff therefor with the said defendant company; that such joint through tariff was duly issued and became effective November 22, 1918, and was duly approved by the United States Railroad Administration and the Interstate Commerce Commission; that under such joint through tariff the combined rate on coal from Carthage, and also from the spur track of the petitioner, to El Paso, was 25 cents per ton lower than the combined rate, according to the tariff issued by the defendant com-

pany, covering the local haul from Carthage to San Antonio and the haul from San Antonio to El Paso, Tex., over the lines of the said Atchison, Topeka & Santa Fe Railway Company, with other points on the line of the said Atchison, Topeka & Santa Fe Railway Company in the state of New Mexico reduced in the same proportion. The defendant thereupon pleaded want of jurisdiction in the State Corporation Commission to change, alter, or consider the joint tariff on coal from Carthage over the line of the defendant company to the junction point of San Antonio, and thence over the lines of the Atchison, Topeka & Santa Fe Railway Company, either to the city of El Paso in the state of Texas, or to other points on the line of said Atchison, Topeka & Santa Fe Railway Company beyond said junction point of San Antonio, upon the ground that the supervision and control of all said joint tariffs made by the said Atchison, Topeka & Santa Fe Railway Company was under the control and direction of the United States Railroad Administration.

The petitioner filed a reply denying that any joint through tariff rate upon the two railroads mentioned had ever been approved by the United States Railroad Administration, or the Interstate Commerce Commission, and alleged that neither the United States Railroad Administration nor the Interstate Commerce Commission had any power, authority, or jurisdiction to pass upon, determine, or establish such local rates.

A formal hearing was ordered upon the questions involved in the pleadings beginning on March 17, 1919, and a large amount of testimony was taken as to the reasonableness or unreasonableness of the rate of 85 cents per ton for coal shipments over the defendant company's railroad from Carthage to San Antonio. All questions of fact relevant to the question of a reasonable rate were gone into on this hearing. The result of that hearing was a finding by the

State Corporation Commission that the rate charged by the defendant company of 85 cents per ton for coal in carload lots, in effect June 25, 1918, to October 12, 1920, was excessive, unjust, and unduly compensatory. The Commission further found that a rate of 65 cents per ton on coal in carload lots over the said railroad was a fair, just, and compensatory rate, so as to produce to the defendant company a return upon the investment of 8 per cent upon its authorized capital, and 7 per cent plus upon the valuation of the said defendant company's property as placed thereon by the Interstate Commerce Commission. The Commission thereupon on December 3, 1920, ordered that the defendant company desist from publishing, demanding, or collecting on or after December 15, 1920, in excess of 65 cents per ton for the transportation of coal in carload lots between Carthage and San Antonio.

The defendant company having declined to obey this order, the petitioner moved for the removal of the case into this court, which accordingly was done, and the case is here for consideration.

[1] We have carefully examined the transcript of the record in this cause and find that there is what seems to be satisfactory evidence to support the finding of the State Corporation Commission to the effect that the rate of 65 cents per ton for coal in carload lots is a reasonable, just, and fairly compensatory rate. We therefore must decline to disturb the finding as unjust, discriminatory and not duly compensatory.

[2] The main question in the case is the question of jurisdiction of the State Corporation Commission to fix the rates over the defendant company's railway under the circumstances in which it was situated when the petition was filed and the order made.

In this connection it is to be noted that the defendant at all times has been and is a purely local rail-

road, and engaged in intrastate commerce only; that while at one time it was taken over by the Director General of Railroads, it was relinquished prior to the institution of this proceeding. It would seem to follow, therefore, that the Director General of Railroads had no jurisdiction of the defendant in regard to rates, or otherwise, after this proceeding was instituted. Nor did the Interstate Commerce Commission have jurisdiction over the road in regard to intrastate rates, except, possibly, in case an intrastate rate might be found, upon investigation, to be unduly discriminative against interstate commerce. At any rate, the record discloses no action upon the part of the Interstate Commerce Commission in regard to a through interstate rate.

On the other hand, the Santa Fe, at the time of the institution of this proceeding, and down to March 1, 1920, was under the direct control of the Director General of Railroads, and thereafter for six months, or until September 1, 1920, rates could not be lowered by any authority, except the Interstate Commerce Commission. Section 208a, Transportation Act 1920, Supplement 1920, Fed. Stat. Ann. p. 80 (41 Stat. 464).

During the time the defendant and the Santa Fe were under federal control, general order No. 28 was promulgated as of date May 25, 1918, whereby all roads were required, with certain exceptions, to increase freight rates on coal by certain arbitrary amounts per ton beyond former rates, to all points, whether intrastate or interstate. In pursuance of that order, defendant increased its rate between Carthage and San Antonio from 50 cents to 85 cents per ton, and the Santa Fe from San Antonio to El Paso (for example) increased its rate from $1.15 to $1.50, thus making the combination rate from Carthage to El Paso $2.35, which was afterwards, in some way not necessary to trace, reduced to $2.10. Afterwards, on November 15, 1918, the Director General of Railroads issued Supplement No. 7 to Tariff No.

7314-D (a tariff promulgated under such general order No. 28), and afterwards on November 30, 1918, issued Supplement No. 8 to Tariff No. 7314-D; but these orders referred in terms only to the Santa Fe, except that they required the Santa Fe, upon all shipments of coal originating on defendant's road, to continue the said raises of rates on coal shipped from San Antonio to either intrastate or interstate points. The intention of the Director General in thus singling out the defendant company and commanding the Santa Fe to make the increased charges on coal originating on defendant's line evidently was thus, indirectly at least, to maintain control over rates on the defendant's line. Whether this was within the power of the Director General, it is not necessary to decide, in view of some further considerations to be mentioned.

It is to be recalled that the petition was filed in November, 1918, the testimony was taken in 1919, and the judgment was rendered December 3, 1920. At that time there was no federal administration of railroads, and the force and effect of all orders as to rates made by the Director General had ceased, and all railroads had been restored to their respective owners. Had the defendant relied upon the fact of these orders depriving the State Corporation Commission of jurisdiction, and not gone into the question of the rates upon the facts and merits, we might be called upon to decide what effect, if any, the general order and supplements referred to had upon the power of the State Corporation Commission. But the defendant went fully into the question of what was a duly compensatory rate, presenting all the consideration entering into such a question, and lost on the facts before the State Corporation Commission. In ordinary litigation, of course, the plaintiff must prevail upon the facts as they existed and were alleged at the time of filing his complaint. If new facts intervened, they must ordinarily be brought forward

by way of supplemental pleading. But in a case like the present, when the question is the reasonableness of a freight rate at the time the same is fixed by the State Corporation Commission, so long as the parties have had full opportunity to present the case on the merits, there is no reason to resort to any technical or artificial rules of pleading. This being the situation, and we having determined that the order is supported by substantial evidence, there would seem to be no reason why the judgment should not be approved. The power to fix rates is amply provided for in section 7 of article 11 of the Constitution. If the rate fixed by the State Corporation Commission unduly discriminates against interstate commerce, the Interstate Commerce Commission is the forum before which such a question should be presented.

Here the question is simply what is a reasonable rate between Carthage and San Antonio, and we approve and affirm the finding of the State Corporation Commission on the facts, that a rate of 65 cents per ton on coal in carload lots is a just, reasonable, and duly compensatory rate, and direct that the defendant forthwith put into effect the said rate, as in the said order of the State Corporation Commission it was commanded to do, and it is so ordered.

BRATTON, and BOTTS, J. J., concur.